UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
LORENA M. MILLIGAN, individually and
on behalf of all others similarly
situated,

                         Plaintiff,

                                                    **REPORT AND**
                                                    **RECOMMENDATION**
                                                    CV 16-240 (JMA)(GRB)

              -against-


GEICO GENERAL INSURANCE COMPANY and
CCC INFORMATION SERVICES, INC.

                         Defendants.
---------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

        Currently pending before the undersigned upon referral from the Honorable Joan M.

Azrack are defendants' motions to dismiss this putative class action, which seeks recovery based

upon alleged systematic underpayments for current model year vehicles damaged beyond repair

in accidents and insured by defendant GEICO.   One portion of those motions – specifically, the

claim that the action is barred based upon a failure to engage in an appraisal process contained in

the relevant policy –was converted to a motion for summary judgment.  For the reasons set forth

herein, the undersigned respectfully recommends that defendants' motions to dismiss be

GRANTED in part and DENIED in part, and the motions for summary judgment be DENIED.

                         **PROCEDURAL HISTORY**

        Plaintiff, Lorraine Milligan, commenced this action by the filing of a complaint on

January 15, 2016. DE 1.  By letter motions dated March 18, 2016, defendants moved for a pre-

motion conference in connection with the filing of motions to dismiss.  DE 26, 27.   In response,

the Court waived the pre-motion conference requirement, and set a briefing schedule.  Electronic

Order dated Apr. 28, 2016.  On August 17, 2016, the parties filed fully-briefed motions to dismiss.  DE 33-47.  On October 17, 2017, the Honorable Joan M. Azrack referred said motions to the undersigned for Report and Recommendation.  *See* Electronic Order dated Oct. 17, 2017.

Review of the motion papers revealed that defendants' 12(b)(6) motions  "attached factual matters, of which the Court cannot take judicial notice, and which are integral to the arguments proffered."  DE 48 at 1.  Concluding that "the pending motions defy reasoned review without reference to the extrinsic materials," on March 8, 2017, the undersigned ordered that "in order to save time and expense on the part of the parties, the motions to dismiss are hereby deemed WITHDRAWN without prejudice to renewal by filing, within sixty days of the date of this order, the additional materials required by the rule."  *Id.* at 3.

On April 26, 2017, defendants filed a pre-motion conference letter with the undersigned seeking to have a conference concerning potential "motions to compel Plaintiff Lorena M. Milligan to proceed to Appraisal in accordance with the terms and conditions of the policy of insurance."  DE 50.   In their request, defendants noted that the appraisal aspect of their motions to dismiss "was the only portion of Defendants' respective motions that relied upon material outside of the pleadings."  DE 50 at 2.  Plaintiff responded that such a motion would be impermissible given the procedural standing of the case.  DE 51.  After affording the parties an opportunity to attempt to resolve or narrow the issues through discussion, which was unsuccessful, the undersigned held a conference and oral argument on May 22, 2017.  *See* Minute Order dated May 22, 2017.  At the conference, the Court reinstated the motions to dismiss, but converted the appraisal portion of those motions to summary judgment motions, under Rule 12(d), permitting the parties time to submit additional materials on the appraisal

question or an affidavit under Rule 56(d) if additional discovery was required.  *Id.*  No additional

materials were submitted.  DE 53.

## FACTS

### Allegations of the Complaint

Plaintiff Lorena M. Milligan ("Plaintiff"), a Suffolk County resident, owned a current

model year vehicle insured by defendant GEICO, which maintains a principal place of business

in Maryland.  DE 1 at ¶¶ 1-6.  That policy was governed by New York State insurance

regulations, including Regulation 64, which, as relevant herein, requires an insurer, in the case of

a total loss,  to reimburse the owner of a current model year vehicle the reasonable purchase

price less any applicable deductible and depreciation allowances.  *Id.* at ¶ 17, (citing 11

N.Y.C.R.R. § 216.7(c)(3).  Plaintiff purchased an automobile insurance policy from GEICO

covering bodily injury and property damage for the period from January 27, 2015 to January 27,

2016 relating to her 2015 Lexus.  *Id.* at ¶ 19.  On May 15, 2015, Plaintiff's 2015 Lexus was

totaled in a rollover accident, and she promptly filed a claim.  *Id.* at ¶¶ 20-21.

GEICO relied upon defendant CCC Information Services Inc. ("CCC") to prepare a

Valuation Report that reflected "a valuation summary total of $45,924."  *Id.* at ¶¶ 23-27.  This

sum was calculated "by comparing similar vehicles from three local dealers, which were

reflective of the market value." *Id.* at ¶ 28.  According to the complaint, "the CCC report

includes information that was directed at Plaintiff Lorena Milligan, evidencing that CCC knew

that this report was intended to be directed to and shared with Lorena Milligan and to induce her

reliance on the conclusions in the report."  *Id.* at ¶ 30.  GEICO issued Plaintiff payment in the

amount contained in the CCC Valuation report, "[r]ather than paying Plaintiff the reasonable

purchase price of a new identical vehicle on the date of the loss less any applicable deductible

and depreciation allowances, as required by Regulation 64." *Id.* at ¶¶ 29-31.  The complaint sets

forth class allegations suggesting that the practices alleged affected a broad range of GEICO

insureds.  *Id.* at ¶¶ 34-45.

Based on these allegations, the complaint purports to set forth individual and class-wide

causes of action for breach of contract, violation of New York State rules and regulations,

negligence, deceptive practices under the New York General Business Law and unjust

enrichment, and seeks damages, declaratory judgment and injunctive relief.  *See generally* DE 1.

**Undisputed Facts Regarding the Appraisal Issue**

While the contours and import of the policy's appraisal clause is discussed further below,

the following undisputed or indisputable facts provide a framework for that discussion.  Section

III of the subject policy provides as follows:

> APPRAISAL
> If we and the ***insured*** do not agree on the amount of ***loss,*** either may, within 60
> days after proof of ***loss*** is filed, demand an appraisal of the ***loss***. In that event, we
> and the insured will each select a competent appraiser.  The appraisers will select
> a competent and disinterested umpire.  The appraisers will state separately the
> ***actual cash value*** and the amount of the ***loss***.  If they fail to agree, they will
> submit the dispute to the umpire.  An award in writing of any two will determine
> the amount of ***loss***.  We and the ***insured*** will each pay his chosen appraiser and
> will bear equally the other expenses of the appraisal and umpire.
>
> We will not waive our rights by any of our acts relating to appraisal.

*See* DE 34-2.  The definitions section of the policy defines the highlighted term "actual cash

value" as "the replacement cost of the auto or property less depreciation or betterment."  *Id.*  And

while "proof of loss" is not a defined term in the policy, that document does require that an

insured must, with 91 days of loss, file "a sworn proof of loss including all information we may

reasonably require."  *Id.*

By letter between counsel dated March 8, 2016 (after commencement of this suit),

GEICO communicated a "DEMAND FOR APPRAISAL" to counsel for plaintiff.  DE 34-3.  In

that letter, GEICO demanded, *inter alia*, suspension of the instant proceeding, and the

identification by plaintiff of an appraiser to participate in an appraisal process.  *Id.* at 1-2.  By

email dated March 16, 2016, plaintiff's counsel indicated that the demand was untimely, citing

correspondence with a GEICO claims representative dated July 21, 2015.  DE 34-4.   Those

communications make clear that by July 3, 2015, plaintiff had already made a claim, GEICO had

paid $45,924 to Lexus (as the plaintiff's vehicle had been leased) and counsel for plaintiff

disputed the amount paid.  DE 37-5 at 4.

## DISCUSSION

### Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss the complaint for "failure to state

a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "In considering a motion to

dismiss under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint

and draw all reasonable inferences in the plaintiff's favor."  *Henry v. Nannys for Grannys Inc.*,

86 F. Supp. 3d 155, 157 (E.D.N.Y. 2015) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 188

(2d Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal,*

556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, a complaint must supply "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.' "  *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

5

at 570); *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595

F.3d 86, 91 (2d Cir. 2010); *see also* Fed. R. Civ. P. 12(b)(6). A claim is plausible when the

plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

The motions for summary judgment are decided under the oft-repeated and well-defined

standard of review for such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F.

Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x. 54 (2d Cir.

2016), which discussion is respectfully incorporated by reference herein.

I.     **The Motions to Dismiss**

A.  **Sufficiency of the Breach of Contract Cause of Action**

New York State Insurance Regulation 64, found at 11 N.Y.C.R.R. § 216.7(c)(3)

("Regulation 64") provides, in relevant part, as follows:

> If the insured vehicle is a private passenger automobile of the current model year,
> the insurer shall pay to the insured the reasonable purchase price to the insured on
> the date of loss of a new identical vehicle, less any applicable deductible and an
> allowance for depreciation.

For avoidance of doubt, as plaintiff properly notes, "[a]pplicable provisions of the Insurance Law

are deemed to be part of an insurance contract as though written into it." *Trizzano v. Allstate Ins.

Co.,* 780 N.Y.S.2d 147, 149 (2d Dep't 2004) (holding that "Regulation 64 had the same effect as

a contractual provision affording Allstate the option it chose to settle the plaintiffs' insurance

claim"); *see Security Mut. Life Ins. Co. of N.Y. v. Rodriguez,* 880 N.Y.S.2d 619, 622-23 (1st

Dep't 2009) ("Existing and valid statutory provisions enter into and form a part of all contracts

of insurance to which they are applicable, and, together with settled judicial constructions

thereof, become a part of the contract as much as if they were actually incorporated therein")

(quoting *2 Couch on Insurance 3d* § 19:1)).  Thus, it is beyond question that this policy is governed by the terms of Regulation 64.

Exactly what that means in this context, however, requires further consideration. Because the allegations of the complaint indicate that plaintiff's vehicle was a "current model year" vehicle damaged beyond repair within the parameters of the regulation, GEICO was required to pay plaintiff "the reasonable purchase price . . . on the date of loss of a new identical vehicle," less appropriate deductions.  Through an exegesis of Regulation 64 and related provisions, GEICO argues that the term "reasonable  purchase price" is synonymous with "market value," and hence its reliance on CCC's report (which apparently relied upon the sale price of three other new comparable vehicles to compute a value) fully complies with the statute. *See* DE 35 at 11.  There are problems with this analysis, however, some of which extend from CCC's report.  That report, which uses its own nomenclature including phrases like "Base Vehicle Value" and "Adjusted Vehicle Value," DE 37-3, may well prove to be an accurate assessment of "reasonable purchase price . . . on the date of loss of a new identical vehicle." Regulation 64.  However, the CCC Report – the methodology of which can be difficult to follow – includes notes that suggest that the values provided are distinct from that required by the Regulation.  *See, e.g.,* DE 37-7 at 17 (noting that "Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value").  It also appears that none of the comparable vehicles analyzed were for sale within the State of New York. *Id.* at 17.

Of course, these are largely the kinds of considerations the Court might examine if this were a motion for summary judgment, and could well suggest that there were material issues of fact.  However, at this juncture – a motion to dismiss – the Court need look no further than the

well-pleaded allegations of the complaint.  Reasonably construed, those allegations provide that

GEICO used the "adjusted vehicle value" or "market value," in lieu of the statutorily-required

"reasonable purchase price," and that, as a result, GEICO "fail[ed] to fully compensate

[claimants] for the true vehicle replace value" and by which claimants thereby sustained

damages.  DE1 at ¶¶ 2, 31-33.   Assuming these allegations to be true, which the Court must at

this point, the complaint thus sufficiently alleges breach of contract.

For largely the same reasons, GEICO's argument concerning plaintiff's failure to

specify her damages similarly fails.  While it is true that the plaintiff here fails to specify the

amount of damages at issue,[1] such specificity is not required at the pleading stage.  As one court

has noted:

> Although a plaintiff must "plead[ ] factual content that allows the court to draw the
> reasonable inference" that he suffered damages as a result of the breach, *Iqbal,* 556
> U.S. at 678, it need not, at this stage, "specify the measure of damages nor plead ...
> [specific] proof of causation."  *LivePerson, Inc. v. 2417 Customer, Inc.,* 83 F. Supp.
> 3d 501, 516 (S.D.N.Y. 2015) (*quoting Xpedior Creditor Trust v. Credit Suisse First
> Boston (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004)).  The precise
> magnitude of damages proximately caused by the breach is properly evaluated at the
> summary judgment stage, not the motion to dismiss stage.  *See id.; see also Luitpold
> Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie,* 784 F.3d 78, 87
> (2d Cir. 2015) (alleging a speculative measure of damages in a breach of contract
> action does not justify dismissal under Rule 12(b)(6) because nominal damages are
> available under New York law).

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*, No. 15-CV-

2044 (AJN), 2016 WL 205445, at *7 (S.D.N.Y. Jan. 15, 2016) (denying motion to dismiss where

"pleadings describe the alleged causal relationship between breach and damages, allowing the

---

[1] According to the papers submitted, the actual purchase price of plaintiff's vehicle, which is
noted as either $50,444 or $51,400. DE 38 at 8 (citing DE37-1 (illegible)). Either way, the actual
purchase price exceeds the $45,924 paid by GEICO, even considering the appropriate
deductibles. DE 37-5.  This would, at least inferentially, suggest a damage figure.  Of course, it
has not been established that the actual purchase price of the plaintiff's vehicle was necessarily a
reasonable one, and it may be that the reasonable purchase price fluctuates during the model
year.  Such questions must await further litigation and discovery.

Court to draw the reasonable inference that the breach proximately caused some measure of damages"). Similarly, here, while not overwhelming in their detail, the facts alleged by plaintiff are sufficient to create an inference that some damages were sustained as a result of the alleged breach. Thus, the undersigned respectfully recommends that the motion to dismiss the breach of contract cause of action as to GEICO be denied.

The analysis as to CCC's motion to dismiss this cause of action is far more straightforward, and leads to a different result. Plaintiff does not -- as she cannot -- allege that she has a contractual relationship with CCC. *See generally* DE 1. "Without a contractual relationship, there can be no alleged breach." *Inter Impex S.A.E. v. Comtrade Corp.,* No. 00 Civ. 0133 (GBD), 2004 WL 2793213, at *4 (S.D.N.Y. Dec. 6, 2004); *see Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1160 (S.D.N.Y.,1988) (granting motion to dismiss where defendants were "not alleged to be parties to the publishing agreements and thus the pleadings do not provide any basis upon which relief could be granted against these defendants"); *Stratton Group, Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978) ("Before [a] defendant may be held accountable for the breach of a contract, it must be demonstrated that he was a party thereto"). In response, plaintiff relies only upon a third-party beneficiary theory as against CCC. DE 44. Unfortunately, plaintiff has failed to allege any of the requisite elements of such a claim; indeed, the words "third-party beneficiary" fail to appear in the complaint. *See* DE 1; *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.,* 651 F. Supp. 2d 155, 185 (S.D.N.Y. 2009) ("Plaintiffs have similarly failed to allege contract language or other facts sufficient to give rise to a plausible inference that any of these contracts 'clearly evidence[ ] an intent to permit enforcement' by plaintiffs."). Therefore, the undersigned respectfully recommends that the motion to dismiss be granted as to the breach of contract claim against CCC.

### B.  Private Right of Action Under Regulation 64

Defendants move to dismiss plaintiff's purported cause of action under Regulation 64, arguing that no private right of action exists under this regulation.  It is well settled that "the regulations in question, which implement a provision of New York State's Insurance Law, do not give rise to any private causes of action."  *Ripka v. Safeco Ins.,* No. 5:14-CV-1442, 2015 WL 3397961, at *2 (N.D.N.Y. 2015) (collecting cases).  The Second Department has observed that "enforcement of the provisions of section 2601 is more appropriately within the province and jurisdiction of the State Superintendent of Insurance."  *Kurrus v CNA Ins. Co.*, 496 N.Y.S. 255, 255 (2d Dep't 1985).

In response, plaintiff suggests that this Court – for the first time and against a tide of authority to the contrary – find an implied right of action as to Regulation 64.  Plaintiff fails to identify anything in the legislative history of this provision that would support the outcome suggested.  *See Maimonides Med. Ctr. v First United Am. Life Ins. Co.,* 981 N.Y.S.2d 739, 743 (2d Dep't 2014) ("Where a statute does not expressly confer a private cause of action upon those it is intended to benefit, a private party may seek relief under the statute 'only if a legislative intent to create such a right of action is 'fairly implied' in the statutory provisions and their legislative history'").  The individuals sought to be protected here – consumers insured by auto insurance companies – are, by definition, parties to a contract and thus have a remedy in the form of an action for breach of contract.  Therefore, it is difficult to imagine how the creation of a duplicative private right of action under the statute would "promote the legislative purpose" underlying the statute.  In addition, even assuming CCC issued its valuation report in a manner inconsistent with Regulation 64, it is unclear whether that regulation governs the conduct of a professional automobile appraiser.  *See* Regulation 64 (governing what "the insurer shall pay"

rather than establishing standards for valuation); DE 44 at 8 (plaintiff acknowledging "GEICO is required to comply with . . . Regulation 64").

Thus, the undersigned respectfully recommends that defendants' motions to dismiss with respect to plaintiff's cause of action pursuant to Regulation 64 be granted.

### C.  Plaintiff's Negligence Claim

GEICO and CCC also seek to dismiss plaintiff's negligence claim, which is predicated on the notion that defendants owed a duty to provide a valuation of her damaged vehicle and did so negligently.  As to GEICO, it is well established that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.,* 70 N.Y.2d 382, 389 (1987).  Here, the duty purportedly violated as well as the damages sought are entirely coextensive with the breach of contract claim.

Plaintiff cites *Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.,* 569 F.2d 181, 185 (2d Cir. 1977) for the proposition that "[n]egligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract."   However, the Second Circuit clarified this language in subsequent case law, explaining that such a duplicative cause of action is permitted only under the following circumstances:

> Where a person contracts to do certain work he is charged with the common law duty of exercising reasonable care and skill in the performance of the work required to be done by the contract. It is the breach of the duty imposed by law and not of the contract obligation which constitutes the tort.

*William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 602 (2d Cir. 1989) (quoting *Rosenbaum v. Branster Realty Corp.*, 93 N.Y.S.2d 209, 211 (1st Dep't 1949)).  As plaintiff has failed to articulate any basis for a duty independent of the contract, this claim is without merit.   Plaintiff's attempt to formulate an independent duty from Regulation 64 fails for several reasons, including, as discussed above and urged by plaintiff, "[a]pplicable provisions of the Insurance Law are

11

deemed to be part of an insurance contract as though written into it." *Trizzano,* 780 N.Y.S.2d at 149.

Plaintiff's negligence claim against CCC is even further attenuated. To prevail against CCC, plaintiff must not only establish the independent duty, but also that she is a third-party beneficiary of a contract between CCC and GEICO. As noted above, the only purported basis for an independent duty – Regulation 64 – may be inapplicable to CCC, and plaintiff lacks sufficient allegations to sustain a third-party beneficiary theory. Having failed to adequately allege these matters, the negligence claim fails as against CCC as well.

Therefore, the undersigned respectfully recommends that plaintiff's negligence cause of action be dismissed as to both defendants.

### D.   GBL § 349 Claim

Plaintiff also asserts a claim against defendants pursuant to N. Y. Gen. Bus. Law § 349 ("GBL § 349"). As the Second Circuit has held: "GBL § 349(a) declares unlawful '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.' The statute provides both for enforcement by the attorney general, *id.* § 349(b), and a private right of action to any person injured by the deceptive acts or practices committed by a business, *id.* § 349(h)." *Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 51 (2d Cir. 1992). The Circuit further held:

> Nationwide contends that the statute cannot be used against insurance companies because of the pervasive statutory scheme regulating unfair and deceptive acts and practices by insurance companies. *See* N.Y. Ins. Law §§ 2401 *et seq.* & 2601 (McKinney 1985). The Insurance Law empowers and charges the Superintendent of Insurance to investigate and hold hearings on allegations of deceptive and unfair claims settlement practices, and to enforce the statute's prohibitions by cease and desist orders or, through the attorney general, judicial action. *Id.* §§ 2404–07. Nationwide asserts that this statutory scheme preempts the use of GBL § 349 by private individuals against insurance companies. This argument fails, however, because it ignores the plain language of GBL § 349(g), which states that

> "[t]his section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state."  By its own terms, therefore, GBL § 349 applies to the acts or practices of every business operating in New York.  Official Practice Commentaries to General Business Law §§ 349–50*, reprinted at* 19 McKinney's § 349, at 90–92 (Supp.1992) (stating that GBL § 349 "contains no exceptions or exemptions for regulated industries", and suggesting possible usages against insurance companies).  Nowhere does GBL § 349 provide an exception for insurance companies, nor does the Insurance Law exempt insurance companies from the reach of GBL § 349.

*Id.* at 51–52.  "'A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *New World Solutions, Inc. v. NameMedia Inc.*, 150 F.Supp.3d 287, 329 (S.D.N.Y.  2015) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000)).

  While GEICO posits several arguments, including suggesting that the allegations fail to identify "consumer oriented" activity or that the complaint fails to allege anything beyond a pure breach of contract, these arguments are unavailing.  *See* DE 35 at 26-28.  Viewed, as they must be, in a light most favorable to plaintiff, the allegations clearly state a pattern of conduct that could well violate the proscriptions of GBL §349.  Taken together, those allegations describe " a systematic scheme to deceive Plaintiff and members of the Class that failed to fully compensate them for the loss of their vehicles as required by Regulation 64" involving the underpayment of claims and provision of valuation reports intended to mislead the policy holder as to the actual amounts owed.  *See generally* DE 1, ¶ 84.  At this stage, such allegations are sufficient to survive a motion to dismiss.

  The question is much closer as applied to CCC.  CCC correctly observes that the conclusory allegations as to its conduct fail to allege "mendacity." DE 42 at 14 (citing *Leider v. Ralfe*, 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005) (holding that "while the statute's reach is broad,

13

and its purpose remedial, any claim asserted thereunder must necessarily incorporate an element

of mendacity"), *overruled on other grounds*, *New World Solutions,* 150 F. Supp. 3d at 330, n. 26.

However, this notion is undermined by the lower court holding in *Riordan* that GBL §349

"contains no requirement that a plaintiff demonstrate that the deceptive practice was intentional

or reckless, or constituted fraud in order to state a valid claim for relief." *Riordan v. Nationwide*

*Mut. Fire Ins. Co.,* 756 F. Supp. 732, 737 (S.D.N.Y. 1990).  As the Appellate Division's Second

Department ruled:

> Since the purpose of such restrictions on commercial activity is to afford the
> consuming public expanded protection from deceptive and misleading fraud, the
> application is ordinarily not limited to instances of intentional fraud in the
> traditional sense (*Matter of State of New York v. Bevis Ind.,* 63 Misc.2d 1088, 314
> N.Y.S.2d 60; *see, also, People v. Federated Radio Corp., supra; Matter of
> Lefkowitz v. Bull Investment Group, supra* ). Therefore, proof of an intent to
> defraud is not essential.

*Allstate Ins. Co. v. Foschio*, 462 N.Y.S.2d 44, 46–47 (2d Dep't 1983).  Thus, even though the

complaint appears devoid of any allegations of malicious intent on the part of CCC, the existing

case law suggests that the allegations are sufficient – if barely – to survive a motion to dismiss.

Thus, the undersigned respectfully recommends that defendants' motions to dismiss the

GBL § 349 claim be denied.

### E.  Unjust Enrichment, Declaratory Judgment and Injunctive Relief

Defendants seek dismissal of plaintiff's claims relating to unjust enrichment and demand

for declaratory judgment.  As to GEICO, because there is no dispute as to the existence of an

enforceable agreement, even the cases cited by plaintiff suggest that this claim should be

dismissed.  DE 38 at 27 (citing *e.g. Kermanshah v. Kermanshah*, No. 08-CV-409 (BSJ) (AJP),

2010 WL 1904135, at *6 (S.D.N.Y. 2010) ("[T]he determination that an enforceable contract

existed necessarily precludes an unjust enrichment claim based on the same underlying

agreement"). Thus, because there is no dispute as to the existence of an enforceable contract, a

cause of action for unjust enrichment against GEICO cannot stand, and the undersigned respectfully recommends that the motion to dismiss this claim be granted.

As to CCC, a party not in privity with the plaintiff, the issue is more difficult.  CCC argues that plaintiff must allege that she "parted with money or a benefit that was received by [CCC at her] expense . . . The benefit must be 'specific' and 'direct' in order to support an unjust enrichment claim. *In re Bayou Hedge Funds Inv. Litig.,* 472 F. Supp. 2d 528, 531–32 (S.D.N.Y. 2007).  However, this no longer represents the current state of New York law.  "Today, New York law does not require an unjust enrichment plaintiff to plead 'direct dealing' or an 'actual, substantive relationship' with the defendant. It merely requires that the plaintiff's relationship with a defendant not be 'too attenuated.'" *Waldman v. New Chapter, Inc.,* 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010); *cf. In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 930 (E.D. Pa. 2012) ("[T]he solitary case that Defendants cited in support of their position, *In re Bayou*, was issued a month earlier than *Sperry*, and does not embody the current state of New York law.").  As it is based on cases that have been overturned, and the question of attenuation cannot be resolved on this record, the undersigned respectfully recommends that defendant CCC's motion to dismiss the claim for unjust enrichment be denied.

CCC properly argues that plaintiff's request for injunctive relief is misplaced, as plaintiff has not identified any injury that she or any putative class member has sustained that cannot be remedied through monetary damages.[2]  Thus, this demand should be stricken.  Finally, plaintiff has failed, in her pleadings or motion papers, to articulate a manner in which declaratory relief in this case "will serve some useful purpose to the parties." *Charles Schwab & Co., Inc. v. Retrophin, Inc*., No. 14 Civ. 4294 (ER), 2015 WL 5729498, at *15 (S.D.N.Y. 2015).  Therefore,

---

[2] GEICO joins in this argument.  DE 35 at 23-24.

the undersigned respectfully recommends that the plaintiff's demands for injunctive relief and declaratory judgment be stricken as to both defendants.

## II.      GEICO's Motion for Summary Judgment[3]

As noted, the undersigned converted one aspect of the motions to dismiss – concerning whether engaging in an appraisal process constitutes a condition precedent to plaintiff's action – into a motion for summary judgment based upon the extraneous factual materials submitted by the parties.   While GEICO argues that the appraisal provision constitutes "[p]laintiff's sole remedy to contest the amount of loss in this action," DE 35 at 20, the contractual language does not appear to support this construction.  The appraisal provision states that either party "may, within 60 days after proof of *loss* is filed, demand an appraisal of the *loss . . .*" DE 34-2.   In contract construction, "the word 'may' is generally permissive." *RLS Associates, LLC v. United Bank of Kuwait PLC,* 380 F.3d 704, 710 (2d Cir. 2004).  At the same time, "it can also be read as mandatory where the context suggests the parties so intended." *Id.*  Yet there is nothing here that suggests that this provision, little more than an alternative dispute resolution mechanism, was intended as anything other than a voluntary process.  In fact, the closing phrase of the provision, by which GEICO indicates that "We will not waive our rights by any of our acts relating to appraisal," appears to highlight the contingent, non-binding nature of this provision.

In fact, on this motion, counsel for GEICO seems to rely more heavily upon the company's invocation of the process, rather than its purportedly mandatory nature.  DE 39 at 10.  Thus, the question arises as to whether GEICO timely and properly commenced the appraisal process.  It is undisputed that in response to a claim made by plaintiff, GEICO paid $45,924 on

---

[3] While CCC made a separate demand for appraisal, and has slightly different arguments regarding the timeliness of its demands, because, as discussed above, no breach of contract claim lies against CCC, the Court need not reach its motion regarding appraisal.

or before July 3, 2015.  DE 37-5 at 4.   Shortly thereafter, communications were made in by

which counsel for plaintiff disputed the amount paid.  *Id.*  GEICO did not file a demand for

appraisal until March 8, 2016, within 60 days of the commencement of this suit, but some seven

months after paying plaintiff's claim.  DE 34-3.

 The difficulty here is that the policy indicates a demand for appraisal must be made

"within 60 days after proof of loss is filed."  Notwithstanding the vast amount of factual material

submitted, as well as the opportunity provided by the Court for the parties to supplement the

record, no one has submitted evidence concerning the filing of a formal proof of loss, and the

term is undefined in the policy.[4]  Furthermore, "New York law does not prescribe a form for

proof of loss."  *SR Intern. Bus. Ins. Co. Ltd. v. World Trade Center Properties, LLC*, 381 F.

Supp. 2d 250, 259 (S.D.N.Y. 2005).  The policy at issue does provide that among the "insured's

duties in event of loss," is the responsibility to "[f]ile with us, within 91 days after loss, his

sworn proof of loss including all information we may reasonably require."  DE 34-2 at 12. The

policy does not specifically define that which constitutes a "proof of loss," other than that which

can be deduced from this policy language, to wit: information reasonably required to ascertain

the loss.

 Counsel for GEICO makes the novel argument that the complaint in this action

constitutes "the only arguable proof of loss filed by Plaintiff," and contends that filing a demand

---

[4] The undefined use of the term "proof of loss" in this policy stands in marked contrast to, by
way of example, flood insurance policies managed by the Federal Emergency Management
Agency, which provides a form entitled "Proof of Loss," and carries certain requisites, including
a signature under oath.  *See In re Hurricane Sandy Cases,* No. 14 MC 41, 2014 WL 1379612, at
*3 (E.D.N.Y. 2014) ("FEMA's website defines a 'Proof of Loss' as 'a form used by the
policyholder to support the amount they are claiming under their policy,' and provides a copy of
that form designated as FEMA Form 086–0–9").  Even in those cases, however, "courts have
grappled with exactly what constitutes a proof of loss."  *Id.*

for appraisal within 60 days of the complaint renders that demand timely.  While it is true that a demand for appraisal is not "automatically rendered untimely once the opposing party has initiated litigation," *Amerex Group, Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 200 (2d Cir. 2012), the parties have not presented any authority, nor has the undersigned located any, for the proposition that a complaint constitutes a proof of loss.  In this case, though, the argument is undermined by the language of policy providing that "[s]uit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of loss is determined."  *Id.*  In the face of this requisite, counsel's contention represents a paradox: like Schrödinger's cat, plaintiff's filing must exist both as a proof of loss, which is a condition precedent to the filing complaint, as well as the complaint itself.  While such a conundrum may exist in the theoretical world of quantum physics, in law, this simply will not fly.

The undisputed facts further undercut this claim.  While the parties tussle over what should constitute the proof of loss in this case, the indisputable facts give rise to the inference that, however one might define a proof of loss under this particular policy, plaintiff must have complied with this policy requirement because GEICO paid more than $45,000 as a result of the information provided by plaintiff.  *See* DE 38 at 13 ("Plaintiff submitted a claim to GEICO on May 21, 2015, in addition to all other necessary documentation to substantiate proof of loss.") This construction is consistent with New York law, which holds that "[a]s a general rule, notice and proof requirements are liberally construed in favor of the insured."  *SR Intern. Business*, 381 F. Supp. 2d at 259.  In fact, it is telling that, at least on this motion, GEICO does not raise the failure to file a proof of loss as a defense.

In short, whatever a proof of loss may be, it is not the complaint in this action.  Plaintiff filed the requisite information and qualified for a substantial payment under the policy many months before GEICO's demand for an appraisal, rendering that demand untimely.  GEICO's reliance on *Peck v. Planet Ins. Co.,* No. 93 Civ. 4961**,** 1994 WL 381544, at *2 (S.D.N.Y. 1994) is entirely misplaced, as the policy at issue in that case did not "require a party to make its demand for appraisal at any particular time."

Even assuming, however, that the policy at issue lacked a definite timeframe, GEICO's demand for appraisal would still be rejected as untimely under the facts of this case.  In evaluating the timeliness of a demand for appraisal under New York law, the Second Circuit has held:

> we agree with the framework followed by the district courts that have applied New York law in this area. This framework includes three factors, none dispositive: "(1) whether the appraisal sought is 'impractical or impossible' (that is, whether granting an insurer's appraisal demand would result in prejudice to the insured party); (2) whether the parties engaged in good-faith negotiations over valuation of the loss prior to the appraisal demand; and (3) whether an appraisal is desirable or necessary under the circumstances."

*Amerex Group, Inc.,* 678 F.3d at 201.  Here, two of those factors counsel rejection of the demand for appraisal.  As plaintiff notes, the parties no longer have possession of the remnants of the totaled vehicle, rendering appraisal effectively "impractical or impossible," and something less than "desirable or necessary."  In fact, one could argue that the "appraisal" sought constitutes little more than an opinion on the extent and nature of the coverage provided under the policy, which is clearly prohibited by applicable law.  *Amerex Group,* 678 F.3d at 205 ("[A]n appraiser may not resolve coverage disputes or legal questions regarding the interpretation of the policy.").

Thus, given the demand for appraisal was untimely and ineffective, the undersigned respectfully recommends that GEICO's motion for summary judgment be DENIED, and CCC's motion be denied as moot.

## CONCLUSION

Based on the foregoing, it is respectfully recommended as follows:

1. GEICO's motion to dismiss be DENIED as to plaintiff's causes of action for breach of contract and GBL § 349, but GRANTED as to the causes of action for violation of Regulation 64, negligence and unjust enrichment;

2. CCC's motion to dismiss be DENIED as to plaintiff's causes of action for GBL § 349 and unjust enrichment, but GRANTED as to the causes of action for breach of contract, violation of Regulation 64 and negligence;

3. Plaintiff's demands for injunctive relief and declaratory judgment should be STRICKEN;

4. GEICO's motion for summary judgment based upon its demand for appraisal should be DENIED, while the same motion filed by CCC be denied as moot;

5. Plaintiff should be granted leave to replead, but only to the extent she can further refine or supplement her allegations to deal with the issues addressed herein.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed with the representatives of each party. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension

of time for filing objections must be directed to the district judge assigned to this action prior to

the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections**

**within fourteen (14) days will preclude further review of this report and recommendation**

**either by the District Court or Court of Appeals.**  *Thomas v. Arn*, 474 U.S. 140, 145 (1985)

("[A] party shall file objections with the district court or else waive right to appeal."); *Caidor v.*

*Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's

report operates as a waiver of any further judicial review of the magistrate's decision.").


Dated: Central Islip, New York
      July 14, 2017


                              /s/ Gary R. Brown
                              GARY R. BROWN
                              United States Magistrate Judge