20-3726-cv
*Milligan v. GEICO General Insurance Co.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of February, two thousand twenty-two.

PRESENT:  JOSÉ A. CABRANES,
          GERARD E. LYNCH,
          DENNY CHIN,
                    *Circuit Judges.*

---

LORENA M. MILLIGAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

        *Plaintiff-Appellant,*    20-3726-cv

        v.

GEICO GENERAL INSURANCE COMPANY, CCC INTELLIGENT SOLUTIONS INC.,

        *Defendants-Appellees.*

---

**FOR PLAINTIFF-APPELLANT:**     KEITH L. ALTMAN, The Law Office of Keith Altman, Farmington Hills, MI.

**FOR DEFENDANTS-APPELLEES:**    CHERYL F. KORMAN (Merril S. Biscone, Michael P. Versichelli, Michael P. Welch, *on the brief*), Rivkin Radler LLP, *Attorneys for GEICO General Insurance Company*, Uniondale, NY.

1

CERTIFIED COPY ISSUED ON 02/14/2022

              SAMIR DEGER-SEN (Gregory G. Garre, Jason R. Burt, Marguerite M. Sullivan, *on the brief*) Latham & Watkins LLP, *Attorneys for CCC Intelligent Solutions, Inc.*, Washington, DC.

  Appeal from an order of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Judge*).

  **UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 30, 2020 order of the District Court granting Defendants' motions to dismiss be and hereby is **AFFIRMED in part** insofar as it granted Defendant CCC's motion to dismiss in its entirety, and insofar as it granted Defendant GEICO's motion to dismiss the counts for violation of Regulation 64, negligence, and unjust enrichment. The District Court's order is **VACATED in part** insofar as it granted GEICO's motion to dismiss the breach of contract and GBL § 349 counts. The cause is therefore **REMANDED** to the District Court with instructions that CCC should be terminated from the action and only the breach of contract and GBL § 349 claims against GEICO should proceed to discovery, or to such other pre-discovery proceedings as the District Court deems necessary.

  Lorena M. Milligan ("Plaintiff") appeals from an order of the District Court granting motions to dismiss in favor of GEICO General Insurance Company ("GEICO") and CCC Intelligent Solutions, Inc. ("CCC") (together, "Defendants"). In March 2015, Plaintiff purchased a 2015 Lexus for $51,400.[1] Plaintiff insured the vehicle with an automobile insurance policy (the "Policy") from GEICO. In May 2015, Plaintiff's vehicle was totaled in a rollover, and she submitted an insurance claim. The vehicle was a "current model year" vehicle as defined by Title 11, section 216.7 of the New York Codes, Rules and Regulations, known as "Regulation 64." *See* N.Y. COMP. CODES R. & REGS. ("N.Y.C.R.R.") tit. 11, § 216.7 (2020). Regulation 64 provides that "total losses" for "current model year" vehicles require the insurer to pay "the reasonable purchase price to the insured on the date of loss of a new identical vehicle," less certain applicable reductions for depreciation based on the number of miles driven by the lost vehicle. *Id.* § 216.7(c)(3).

  GEICO contracts with CCC to provide vehicle valuations, and CCC provided GEICO with a so-called "ONE Market Valuation Report" (an "MVR"), in which it "compared Plaintiff's current model year vehicle . . . with three similar dealer vehicles that were available or recently sold in the marketplace at the time of valuation." App'x 465 (internal quotation marks omitted). The MVR

---

[1] Though the actual exhibit in the Record on Appeal to which the parties cite the original purchase price is illegible, *see* 2:16-cv-240 Dkt. No. 37-1 (illegible), the parties do not appear to contest the amount. *Compare* Pl. Br. at 1 *with* GEICO Br. at 11.

valued Plaintiff's vehicle at $45,924, and GEICO issued a claim payment for that amount to Plaintiff.

On January 15, 2016, Plaintiff filed her Initial Complaint in this putative class action against Defendants in the District Court (Joan M. Azrack, *Judge*). Plaintiff articulated six counts in the complaint: (1) breach of contract; (2) violation of Regulation 64; (3) negligence; (4) unfair and deceptive trade practices in violation of New York General Business Law ("GBL") § 349; (5) declaratory and injunctive relief against GEICO; and (6) unjust enrichment. Defendants moved to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Defendants also filed a separate motion to compel Plaintiff to comply with the Policy's appraisal process. Judge Azrack referred the motions to then-Magistrate Judge Gary R. Brown who issued a Report and Recommendation ("R&R").

As to GEICO's motion to dismiss, the R&R recommended denying the motion for the breach of contract and GBL § 349 claims, but granting it for the Regulation 64, negligence, and unjust enrichment claims.

As to CCC's motion to dismiss, the R&R recommended denying the motion for the unjust enrichment and GBL § 349 claims, but granting it for the Regulation 64, negligence, and breach of contract claims.

As to the Defendants' demands for declaratory and injunctive relief, the R&R recommended they be stricken. And as to the Defendants' separate motions to compel arbitration, Magistrate Judge Brown converted the motions to motions for summary judgment, which he recommended be denied.

Judge Azrack adopted the R&R in an order issued on March 31, 2018 and granted Plaintiff leave to replead.[2]

Plaintiff filed her operative Amended Complaint on May 7, 2018. Plaintiff articulated the same six counts as in her Initial Complaint and, apart from certain language specifying a theory that Plaintiff was a "third party beneficiary" to GEICO's contract with CCC added to the breach of contract count, the Initial and Amended Complaint were nearly identical (giving rise to the "law of the case" arguments discussed in Part IV of this order). *Compare* App'x 15-30 *with* App'x 461-78. Defendants again moved to dismiss for failure to state a claim. The District Court (Irizarry, *Judge*) granted Defendants' motions in their entirety, dismissing Plaintiff's action with prejudice.

---

[2] Defendants brought an interlocutory appeal from the denial of their motions to compel arbitration. We affirmed. *Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 154 (2d Cir. 2019).

3

Plaintiff appeals the District Court's dismissal of the breach of contract, GBL § 349, and injunctive relief counts as to both Defendants.[3] Plaintiff also argues on appeal that the District Court's order violated the law of the case doctrine, and that she should have been given leave to replead. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## DISCUSSION

"We review *de novo* a district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff[]." *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012). We review both a district court's application of the law of the case doctrine and its denial of leave to amend for abuse of discretion. *Devilla v. Schriver*, 245 F.3d 192, 198 (2d Cir. 2001) (law of the case); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (leave to amend).

    I.    Breach of Contract

        a.  GEICO

To make out a breach of contract claim, a plaintiff must plead "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Regulation 64 is "deemed to be part of an insurance contract as though written into it." *Trizzano v. Allstate Ins. Co.*, 7 A.D.3d 783, 785 (2d Dep't 2004) (cleaned up). Plaintiff therefore claims that GEICO breached the Policy by failing to comply with Regulation 64. The regulation provides in pertinent part that:

> If the insured vehicle is a private passenger automobile of the current model year, the insurer shall pay to the insured the reasonable purchase price to the insured on the date of loss of a new identical vehicle, less any applicable deductible and an allowance for depreciation in accordance with the schedule below . . . .

11 N.Y.C.R.R. § 216.7(c)(3). The question, then, is the meaning of the phrase "reasonable purchase price . . . of a new identical vehicle" within the context of Regulation 64, and how such a price must be determined.

The District Court based its interpretation of this phrase on the next paragraph of the regulation, § 216.7(c)(4). That paragraph provides that if an insured notifies her insurer that she

---

[3] Plaintiff appears to abandon the Amended Complaint's claims of negligence, unjust enrichment, and violation of Regulation 64. And while she still claims she is entitled to injunctive relief, she also no longer appears to argue for declaratory relief. These arguments are therefore waived. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

4

"cannot purchase a *comparable vehicle for the market value*, as determined under the provisions of subparagraph (1)(i), (ii), (iii), or (v) *or [§ 216.7(c)(3)]*," the insurer must offer the insured certain alternatives. 11 N.Y.C.R.R. § 216.7(c)(4) (emphases added). Based on this, the District Court concluded that "a 'reasonable purchase price' is one that would allow the insured to purchase a 'comparable vehicle for the market value.'" Special App'x 7. GEICO based its payment to Plaintiff on the MVR, which was derived from three "comparable vehicle(s) available or recently sold in the marketplace." App'x 546; *see also id*. 558-61 (comparing vehicles). The District Court therefore concluded that "GEICO complied with Regulation 64" by "issuing a payment reflective of the market value of Plaintiff's vehicle." Special App'x 8.

We only partly agree with the District Court's interpretation of the statute, and disagree with its conclusion that, as a matter of law, GEICO complied with Regulation 64. Although the parties' briefing is not entirely clear, they appear to disagree on the meaning of two different portions of the critical phrase.

*First*, Milligan strongly suggests that the direction to the insurer to pay "the *reasonable purchase price* . . . of a new identical vehicle" requires, at least as a default, payment of the "sticker price" of the vehicle in the relevant geographical market (emphasis added). Federal law requires manufacturers to affix a label to any new automobile, prior to shipment to a dealer, that includes the manufacturer's suggested retail price ("MSRP") for the vehicle, the price of any options included on that automobile not reflected in the MSRP, the transportation fee charged by the manufacturer for transporting the car to that dealer, and the total of those amounts. 15 U.S.C. § 1232(f). That total is commonly referred to as the "sticker price" of the vehicle. It is commonly understood, however, that the sticker price reflects only the manufacturer's *suggested* price, and that it may not be the price most commonly paid for the vehicle, but instead acts as a starting point for bargaining between the dealer and the purchaser. We thus agree with the District Court that if Regulation 64 were intended to require the insurer to pay the sticker price of a new vehicle identical to the lost car, it could and would have used that term, and that the "reasonable purchase price" must instead refer to the price that a reasonable buyer and a reasonable seller would agree upon for the purchase of such a car in the relevant geographic market. That market price may often differ from the sticker price. To the extent that Milligan contends that GEICO violated Regulation 64 simply by asking CCC to survey the market to determine what price was "reasonable," we reject that contention.

*Second*, it appears that the parties also disagree about the meaning of the word "new" in the disputed phrase. Section 216.7(c)(3) requires that the insured be paid the "reasonable purchase price of . . . a *new* identical vehicle" (emphasis added). At oral argument, GEICO's counsel clarified that it interprets "new" to mean a vehicle that is new to the customer, in the sense that it is different from the customer's old vehicle destroyed in the accident. According to GEICO's formulation, Regulation 64 allows them to compensate the customer with the reasonable purchase price for a *used* replacement vehicle of the same age and with the same number of miles on it as the vehicle that was

5

lost. Thus, GEICO argues that Regulation 64 merely requires the insurer to pay the customer, as is usual with respect to insured property, the market value of the car that was destroyed.

We disagree. If that were the meaning of Regulation 64, the word "new" would add nothing. The disputed phrase would have the same meaning without the word "new," because *any* vehicle purchased to replace the one that was totaled in the accident would be new to the customer. Moreover, the market for cars is generally understood to be subdivided into two segments, represented in common usage by the terms "new" and "used" cars. In our view, a "new identical vehicle" means precisely what it says in plain English: a brand-new vehicle of the same make and model, with identical features and almost no miles on the odometer. Accordingly, the "reasonable purchase price of . . . a new identical vehicle" is the price that a reasonable buyer would pay to purchase an identical, brand new, factory-fresh car from the local dealership in the normal course of business.[4] Insurers may only compensate the insured for less based on the applicable deductible, and the statutorily permitted depreciation schedule. *See* § 216.7(c)(3).

There may be several ways to estimate this reasonable purchase price. For example, insurers might consult with local dealerships to identify new cars being offered for sale, or the actual transaction prices for new cars that were sold at or around the time of loss. Indeed, the "sticker price" might well be a relevant variable to consider, albeit not a controlling one. To the extent no "identical" cars were sold within the relevant geographic area reasonably near to the time of the loss, insurers may be able to extrapolate a reasonable purchase price from the sale price of *nearly* identical cars with the aid of a professional appraiser. But regardless of the precise metes and bounds of what is permitted when computing the "reasonable purchase price . . . of a new identical vehicle," Plaintiffs have plausibly alleged that the MVR prepared in the present case was fundamentally deficient.

The MVR itself contains multiple indications that the value it calculated for Plaintiff's vehicle differs from the value that Regulation 64 requires insurers to pay. *See e.g.*, App'x 546 (explaining that comparable vehicles may be "*recently sold* in the marketplace" without reference to time of loss) (emphasis added); *id.* 559 (showing that all the comparable vehicles were used cars, and two had more than 10,000 miles on them); *id.* 560 (showing all comparable vehicles as priced in New Jersey rather than New York). Moreover, CCC candidly acknowledged at oral argument that it had contracted with GEICO to appraise the reasonable value of *Milligan's* car at the time of the loss. It may well be the case that the MVR did, in fact, wind up yielding the reasonable purchase price of a

---

[4] The reference in § 216.7(c)(3) to the "date of the loss" does not change our analysis. That phrase modifies the *price*, not the *vehicle* or its condition; the statute provides for the *price* on the date of the loss of a "*new* identical vehicle," not the price of a vehicle identical to the lost car as it existed on the date of the loss. The price of such a new car might well be different from what the same car cost at the time the lost vehicle was originally purchased, depending on the proximity to the release of a new model or other vagaries of the marketplace. Accordingly, specifying that the price is on the date of the loss makes a meaningful difference in determining how much compensation is owed to the insured.

new identical vehicle. But it is far from apparent that the MVR represents "the reasonable purchase price to the insured on the date of loss of a new identical vehicle" as set forth in Regulation 64, or that it was ever intended to do so. At this stage, construing the facts in favor of Plaintiff as we must, her allegation that GEICO failed to comply with Regulation 64 is well-pleaded.

We therefore vacate the District Court's order of September 30, 2020 insofar as it granted the motion to dismiss the breach of contract claim against GEICO, and remand it for further proceedings consistent with this order.[5]

    b. CCC

By contrast, Plaintiff's breach of contract claim against CCC was properly dismissed. Plaintiff has no contractual relationship with CCC, so her claim relies on being a third party beneficiary of CCC's contract with GEICO. To establish her claim, Plaintiff must plead "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for h[er] benefit and (3) that the benefit to h[er] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate h[er] if the benefit is lost." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) (internal quotation marks omitted). "[T]he language of the contract must clearly evidence an intent to permit enforcement by the third party." *Consol. Edison, Inc. v. Ne. Utilities*, 426 F.3d 524, 528 (2d Cir. 2005) (alteration and internal quotation marks omitted). Here, Plaintiff entirely fails to draw our attention to *any* contractual language that would demonstrate an intent to permit third-party enforcement under the contract. *See* App'x 470-71. The District Court's dismissal of the breach of contract claim against CCC is therefore affirmed.

    II. GBL § 349

    a. GEICO

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GEN. BUS. LAW § 349(a). To state a claim under § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (internal quotation marks omitted).

---

[5] Plaintiff's stand-alone request on appeal that we "reverse the dismissal of punitive and consequential damages under [the breach of contract count]" is inappropriate. We vacate the District Court's dismissal of the substantive count—for breach of contract against GEICO—for the reasons stated above. Whether Plaintiff actually prevails on that count, and what damages might at that time be appropriate, are matters for the District Court in the first instance on which we express no opinion here.

The District Court rested its rejection of Plaintiff's § 349 claims against GEICO primarily on the logic of its breach of contract analysis, namely that because "Regulation 64 contemplates the payment of a market value price as a reasonable purchase price," it could not be materially misleading for GEICO to pay such a market value price to satisfy a claim. Special App'x 18. But as we have already explained, it is not clear at this stage—with the evidence construed in Plaintiff's favor—that the MVR did not *undervalue* Plaintiff's claim under Regulation 64.

The District Court also dismissed the § 349 claim against GEICO because it was not "independent of the loss caused by the alleged breach of contract." *Id.* (quoting *DiGangi v. Gov't Employers Ins. Co.*, 2014 WL 3644004, at *7 (E.D.N.Y. July 22, 2014).[6] On appeal, GEICO attempts to reinforce the notion that "[a]lthough a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract." GEICO Br. at 48 (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)). *See also Sokoloff v. Town Sports Int'l Inc.*, 6 A.D.3d 185, 186 (1st Dep't 2004) (rejecting a GBL § 349 claim where "[p]laintiff does not claim any kind of monetary loss other than payment of her membership fees").

However, as we made clear most recently in *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, the *Spagnola* and *Sokoloff* cases "*do not establish . . . a requirement*" that a plaintiff "allege an injury [under § 349] independent of their contract damages." 875 F.3d at 125 (emphasis added). Instead, those cases stand for the proposition that no § 349 claim exists "where the plaintiffs allege[] damages in the amount of the purchase price of their contracts, but *fail[] to allege that defendants ha[ve] denied them the services for which they contracted*." *Nick's Garage*, 875 F.3d at 125 (emphasis added) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (distinguishing *Spagnola* and *Sokoloff*)). Here, by contrast, Plaintiff *does* allege that she was denied the services for which she contracted. As in *Nick's Garage* and *Orlander*, "Plaintiff has alleged both a monetary loss stemming from the deceptive practice and the Defendant's failure to deliver contracted-for services." *Orlander*, 802 F.3d at 302.

Nor does it save GEICO's motion to dismiss that "paying Plaintiff based on CCC's MVR was fully disclosed." GEICO Br. at 50. "The essence of [Plaintiff's] claims is that Insurer *did not do* what its policy said it would do." *Nick's Garage*, 875 F.3d at 125 (rejecting a similar disclosure argument). That is, the alleged deception is not that GEICO paid Plaintiff's claim based on the MVR, but instead that the MVR did not comply with Regulation 64. As in the breach of contract

---

[6] Though the District Court's order initially appears to reject "Defendants' contentions that [the § 349] claim is duplicative of other claims" as "without merit," Special App'x 17, it later takes up those claims as reasons to grant Defendants' motion. *Id.* 18 ("[T]his injury arises out of the exact causes and effects Plaintiff alleges in her breach of contract claim, and, as such, is insufficient to give rise to a Section 349 claim." (alterations and internal quotation marks omitted)).

context, GEICO may yet prove that its alleged practices were not, in fact, materially misleading. But the contrary is at least well-pleaded at this stage.

We therefore vacate the District Court's order of September 30, 2020 insofar as it granted the motion to dismiss the § 349 claim against Defendant GEICO, and remand it for further proceedings consistent with this order.

    b. CCC

The District Court properly dismissed the § 349 claims against CCC because Plaintiff failed to allege that CCC engaged in any materially misleading conduct. Plaintiff argues on appeal—and below, in opposition to CCC's motion to dismiss—that by referencing Regulation 64 in its MVR, CCC misleadingly held itself out as "complying with Regulation 64." Appellant's Br. at 35; *see* App'x 561 (MVR stating that "[r]egulations concerning vehicle value include . . . Regulation 64"). But this argument is entirely absent from Plaintiff's Amended Complaint. *See id.* 474-75. And the mere incorporation of the MVR's factual statement about Regulation 64 into the Complaint does not make out an argument. "[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) (internal quotation marks omitted). Therefore, the District Court's dismissal of the § 349 claim against CCC is affirmed.

    III.    Injunctive Relief

"Count V" of Plaintiff's Amended Complaint asserts that she was entitled to declaratory and injunctive relief. On appeal, Plaintiff argues only that the District Court erred by dismissing this claim for relief and not granting her an injunction. We disagree. "[A] request for injunctive relief is not a separate cause of action. . . . [R]ather, the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts." *KM Enterprises, Inc. v. McDonald*, No. 11-CV-5098, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) (cleaned up), *aff'd*, 518 F. App'x 12 (2d Cir. 2013). This count was therefore properly dismissed for failure to state a claim, and that dismissal is affirmed.

    IV.    "Law of the Case"

Plaintiff's law of the case argument—arising out of the notion that the District Court allowed certain of the claims from her Initial Complaint to survive, but later dismissed those same claims from her substantively similar Amended Complaint—is unavailing. "[T]he doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'" *Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 952-53 (2d Cir. 1964)). It would have been preferable for the District Court to explicitly acknowledge that it was granting motions to dismiss as to counts for which it had previously denied similar motions on a nearly identical complaint and articulate its rationales for doing so. But the law of the case doctrine "generally does not limit a court's power to reconsider an issue," and doing so is no abuse of discretion. *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991).

V.   Leave to Amend

Finally, Plaintiff argues that the District Court erred by dismissing her claims without providing leave to amend. We disagree. Plaintiff made no request for such leave to the District Court. The "District Court [i]s under no obligation to provide [a plaintiff] with leave to amend the[] complaint, much less provide such leave *sua sponte*." Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004). Moreover, in light of our rulings above, this aspect of the appeal is moot to the extent that Plaintiff seeks leave to replead the breach of contract and § 349 claims against GEICO.

## CONCLUSION

For the foregoing reasons, we **AFFIRM in part** the September 30, 2020 order of the District Court, insofar as it granted CCC's motion to dismiss in its entirety, and insofar as it granted GEICO's motion to dismiss the counts for violation of Regulation 64, negligence, and unjust enrichment. We **VACATE in part** the District Court's order is insofar as it granted GEICO's motion to dismiss the breach of contract and GBL § 349 counts. The cause is therefore **REMANDED** to the District Court with instructions that CCC should be terminated from the action and only the breach of contract and GBL § 349 claims against GEICO should proceed to discovery, or to such other pre-discovery proceedings as the District Court deems necessary.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10